OWENS *v.* AUDITOR GENERAL.

1. TAXATION—TAX SALES—DECREE—COLLATERAL ATTACK.
    A decree for the sale of lands delinquent for taxes cannot be collaterally attacked.

2. SAME—PETITION FOR SALE—LANDS INCLUDED.
    Section 61 of the general tax law (Act No. 206, Pub. Acts 1893), providing that lands "hereafter" bid off in the name of the State and thus held shall not be included in the auditor general's petition, has no application to a petition filed in 1894 to foreclose the lien of the taxes of 1892.

3. SAME—DECREE—SETTING ASIDE—LACHES.
    Where a landowner has paid no taxes on his land for over twenty years, though residing in close proximity thereto, his petition filed more than ten years after the entry of a decree for the sale of the land for taxes will not be entertained, no excuse for his laches being made.

4. SAME—STATUTE—CONSTRUCTION.
    Act No. 84, Pub. Acts 1903, has not the effect to excuse all laches and give the owner of the original title six months after said act took effect within which to attack previous tax sales, but was intended to fix a period limiting a time after which certain sales cannot be attacked.

Appeal from Alpena; Emerick, J. Submitted June 15, 1906. (Docket No. 103.) Decided April 2, 1907.

Bill by Peter Owens against Perry F. Powers, auditor general, Edwin A. Wildey, commissioner of the State land office, the Hecla Portland Cement & Coal Company and the Detroit Trust Company to set aside the sales of certain land delinquent for taxes, and to quiet title. From a decree for complainant, defendants appeal. Reversed, and bill dismissed.

*Henry K. Gustin*, for complainant.

*John E. Bird*, Attorney General (*Charles W. McGill* and *George L. Hauser*, of counsel), for defendants Auditor General and Commissioner of the State Land Office.

*H. H. Hatch* (*Sidney T. Miller*, of counsel), for defendants Hecla Portland Cement and Coal Company and Detroit Trust Company.

MOORE, J.   In the matter of the petition of the auditor general of the State of Michigan, for and in behalf of the State, for the sale of certain lands for the taxes assessed thereon for the years 1887, 1888, 1889, 1890, 1891, 1892, and 1893, respectively; Peter Owens, petitioner. The following statement of facts is taken, in the main, from the brief of counsel for complainant:

"The complainant and petitioner, Peter Owens, is the owner of the original or government title, and he filed his bill of complaint for the purpose of having his title quieted from a certain cloud created by tax deeds.

"The defendants, the two corporations, claim title to the land through what is known as ' State Tax Homestead Deeds.' The defendant the Hecla Portland Cement & Coal Company, having purchased this land from the commissioner of the State land office, subsequently gave a trust mortgage upon this land, with a great many other descriptions of land, to the defendant the Detroit Trust Company in trust for the benefit of its creditors. The State tax homestead deeds were based upon certain alleged tax titles for the taxes of 1884 to 1893, inclusive.

"The complainant first commenced proceedings by filing a bill of complaint on March 14, 1904, in which he asks,

among other things, that the sales of said land, and the decree upon which they were based may be set aside and held for naught, * * * and that the cloud against the title of his land may be removed, and that the defendants be enjoined from claiming any right, title, or interest to the land.

"To this bill of complaint, all defendants appeared in answer. As part of the tax titles upon which the State tax homestead deed is based were advertised, sold, and bid in to the State under the general tax laws of 1889 and 1893, which provide for proceeding in the courts of chancery, the solicitors for the complainants, in connection with and supplementary to the bill of complaint, filed on behalf of the complainant petitions in the original suits brought by the auditor general on behalf of the State for the sale of land for the taxes assessed thereon in the years 1887, 1888, 1889, 1890, 1891, 1892, and 1893. Each of these petitions for their respective years asked, among other things, that the decree theretofore entered in the proceedings for each year may be set aside and held for naught. * * * To each of these petitions the defendants filed separate answers. * * *

"Upon the hearing, the proof showed that Peter Owens was the owner of the original or government title, having purchased the same in 1884; that the land was delinquent for taxes for 1884 to 1893, inclusive; that in 1896 the auditor general and the land commissioner, acting under section 127, Act No. 206 of the Public Acts of 1893, made this land State tax homestead land, and upon the 1st day of December, 1896, the auditor general of the State of Michigan executed State tax homestead deed to the State of Michigan for the taxes of the years 1884 to 1893, inclusive; said land having been bid in to the State at the tax sales in the years 1886, 1887, 1888, 1889, 1890, 1891, 1892, in May, 1893, in December, 1893, 1894, 1895, for the taxes assessed thereon, in the years 1884, 1885, 1886, 1887, 1888, 1889, 1890, 1891, 1892, and 1893, as appears by the deed.

"Upon the 20th day of February, 1903, Edwin J. Wildey, commissioner of the State land office, executed a deed to the Hecla Portland Cement & Coal Company of the land in question. That afterward the Hecla Portland Cement & Coal Company executed mortgage to the Detroit Trust Company upon the 3d day of October, 1903."

The court below granted a decree in favor of the complainant.

A great many interesting questions are discussed in the able briefs which have been presented by counsel; but, in our view of the case, it will not be necessary to discuss them. The tax titles based upon the taxes of 1892 are said to be void for the following reasons, we quote from the briefs:

"(*a*) Tax titles for the taxes of 1892 were void because the figures in column 14, the amount decreed against the land, were not made up and filled out before the signing and entering of the decree; the amounts having been filled out by the county treasurer after the completion of the tax sale. *Morgan* v. *Tweddle*, 119 Mich. 350; *First Baptist Church of Bay City* v. *Robert*, 120 Mich. 704.

"(*b*) They are also void because of the violation of the auditor general of section 61, Act No. 206, Pub. Acts 1893, which declared that the land heretofore bid off in the name of the State and thus held shall not be included in such petition. *Connecticut Mut. Life-Ins. Co.* v. *Wood*, 115 Mich. 444; *Aztec Copper Co.* v. *Auditor General*, 128 Mich. 615."

As to "*a*:" The cases cited by counsel under this head are cases of direct attack made very soon after the decrees were entered. It has been repeatedly held that a decree of sale for the taxes cannot be assailed by a collateral proceeding, as in this case by a bill in chancery. See *First Baptist Church of Bay City* v. *Robert*, 120 Mich. 704; *Wilkin* v. *Keith*, 121 Mich. 66, and the many cases there cited. *Carpenter* v. *Auditor General*, 144 Mich. 251.

(*b*) Is the sale for the taxes of 1892 void because of section 61, Act. No. 206, Pub. Acts 1893? The language of the statute is not as stated in the quotation made above from the brief. It reads:

"Lands hereafter bid off in the name of the State and thus held, shall not be included in such petition."

We cannot do better than to quote from the brief of counsel for defendants:

"That certainly has no application to the petition for the sale on account of the tax of 1892, because when that petition was made, in the fall of 1894, this land had not

then been ' hereafter ' bid off in the name of the State.
All the bidding in the name of the State upon those lands
had been at a prior date, before the amendment took ef-
fect.    There was no such provision in the statute of
1891."

In *Connecticut Mut. Life-Ins.. Co.* v. *Wood*, supra,
in the opinion by Chief Justice GRANT, the following
language was used:

"It must be remembered that the act of 1893 does not
exclude from the petition lands which had theretofore
been bid in by the State, but only lands .which should
thereafter be bid in and held."

Can the complainant obtain relief against this tax of
1892, through the agency of his petition, filed March 17,
1904, in a proceeding which resulted in a decree made
more than 10 years before?   No excuse is made for the
laches of petitioner in not seeking to set aside this decree
earlier.   As already stated, the complainant became the
owner of this land in 1884.   From that time until he
commenced this proceeding, 20 years later, he paid no
taxes thereon.   The land was assessed for taxes every
year thereafter, and returned delinquent until the land
was deeded to the State in 1896 for the taxes of 1884 to
1893, inclusive, and the taxes for 1894, 1895, and 1896
were canceled by the auditor general.   After said deeds
to the State, the land was not subject to taxation, until
after it was sold by the commissioner of the State land
office, under section 131, Act No. 206, Pub. Acts 1893.
Mr. Owens, of course, knew that his land was subject to
taxation, and if the taxes assessed were not paid the land
would be returned delinquent, and sold by the State for
the purpose of foreclosing its lien.   He was a resident
of the city of Alpena, in close proximity to the land in
question, but did nothing toward paying what was due
from him to the State.   He seeks by his petition, filed more
than 10 years after the decree is taken, to have it set aside.
What was said upon the question of laches in *Bending* v.
*Auditor General*, 137 Mich. 500, is applicable here.   The

laches in this case is more marked than in that case. See, also, *Spaulding* v. *O'Connor*, 119 Mich. 45; *Cook* v. *Auditor General*, 124 Mich. 430; *Tromble* v. *Hoffman*, 130 Mich. 676; *Carpenter* v. *Auditor General*, supra. We think it too late to entertain a petition to set aside a decree made 10 years before.

Counsel contend that by reason of the provisions of Act No. 84, Pub. Acts 1903, all laches are excused, and the owner of the original title is given six months after said act took effect in which to attack the sales. We do not so interpret the provisions of that act, but think they were intended to fix a period limiting a time after which certain sales cannot be attacked.

The decree is reversed, and one may be entered here, dismissing the bill of complaint and petitions, with costs of both courts.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.