OLSON v. WILLIAMS.

1. APPEAL AND ERROR — LAW OF CASE — DEMURRER TO BILL — RES JUDICATA.

Questions raised by demurrer to complainant's bill relative to the adequacy of the remedy at law and the sufficiency of the averments of the bill which were determined on a former appeal will not be determined upon a second appeal, being foreclosed by the first decision. The issue upon the second appeal was necessarily whether or not the averments of the bill were sustained by the evidence.

2. STIPULATIONS—DISMISSAL OF ACTION—EJECTMENT.

A stipulation of dismissal filed in an action of ejectment purporting to be signed by the attorney for the plaintiff which was not in fact executed by himself or his attorney of record although the legal counsel who executed the dismissal of the case was attorney for the plaintiff in several matters relating to his title to the land, must be held not to have bound the plaintiff therein.

3. TAXATION—LACHES—EQUITY—BILL TO QUIET TITLE.

Where complainant brought suit to quiet title and to

enjoin proceedings at law in ejectment and where a previous action had been commenced about 1904 and had not been brought to a termination, and where the averments of complainant's bill represented that he had been harassed by numerous suits and actions in relation to the land, and that he was the purchaser under the general tax law of a tax homestead interest in the property in 1897, taking a certificate at that time and entering into possession of the real property, later making a second application and securing a certificate of homestead entry in 1903, defendant making an unsuccessful contest against him before the land commissioner, that he moved upon the land with his family and lived there for five years, and where the complainant averred and produced evidence to sustain his claim that defendant had permitted the land to be returned for taxes during a long period of years and had instituted proceedings against complainant without offering to pay the delinquent taxes, *held*, that the defendant was guilty of such laches as would sustain the bill of complaint on the ground that the defendant had abandoned his rights and had misled complainant into the belief that he had abandoned them even if the statute of limitations had not run against the claim.

Appeal from Alpena; Emerick, J. Submitted January 23, 1914. (Docket No. 53.) Decided April 6, 1915.

Bill by Gilbert Olson against Charles B. Williams to restrain an action of ejectment and to quiet title. From a decree for complainant, defendant appeals Affirmed.

*I. S. Canfield,* for complainant.

*D. W. Closser,* for defendant.

STEERE, J. The bill of complaint was filed in this case to quiet title to 80 acres of land in Alpena county and, as part of the relief asked, to enjoin further proceedings in a pending action in ejectment for possession of the same, begun against complainant by de-

fendant, in March, 1904. The grounds urged for equitable relief are that defendant has, during a period of years, harassed and embarrassed complainant, casting doubt upon his title and right to this land by various unsuccessful suits and proceedings without merit, now proposes to interpose in the ejectment case technicalities against which complainant does not have a complete and adequate remedy at law, and that prior laches of defendant and his grantor raise an equitable estoppel against him at this late date. A demurrer interposed by defendant to this bill of complaint was overruled by the circuit court of Alpena county, in chancery, and an appeal to this court was affirmed. The opinion upon that issue is reported in 172 Mich. 316 (137 N. W. 687), where said bill is set out in full. Defendant was thereafter permitted to plead over, and the case was heard in the trial court upon pleadings and proofs, resulting in a decree favorable to complainant, and defendant has again removed the proceedings here by appeal.

At the time each of the parties to this litigation became interested in the 80 acres in dispute, it was wild, stripped land, of doubtful worth, but a subsequent demand for limestone of the quality found upon it enhanced its marketable value. Defendant claims title under patent from the United States through mesne conveyances, while complainant holds and claims title to it under a State homestead deed purporting to have been issued to him after five years' settlement and improvement, pursuant to the provisions of section 131, General Tax Law of 1893, p. 407, and subsequent amendments. This land adjoins a farm owned by complainant for many years. It is rocky and rolling, underlaid with a solid limestone formation which outcrops in many places, and has upon it little productive soil, except in ravines, where the earth is deeper and good clover or other grasses

will grow. Its chief, if not only, value for farming is as pasture, which complainant claims first led him to become interested in it, and for which he has mostly used it; its paramount value for lime rock being a matter of more recent discovery. Timber of some value grew upon it at one time, but it was lumbered at an early day, and had been burned over as far back as 1871. The land was sold by the United States government, in 1869, to a man named Leasley who, in 1871, deeded it to a business man of Alpena named Henry Beebe, who came to regard it of such scant value that he neglected to pay the taxes upon it for a series of years, and finally, in 1900, sold it to defendant for $15.

Prior to the last-mentioned conveyance, complainant learned that it was delinquent for taxes and had become what is known as State homestead land, having been declared by the auditor general and commissioner of the State land office, after due examination, worthless and abandoned. He then took steps to secure title to it by a State homestead entry, first making application therefor in 1897, when he received a certificate, took possession, and erected a small building, making some other slight improvements; but he did not establish his residence upon it, and his entry was canceled because he had not complied with the law in filing proof of settlement. He thereafter made a second application, receiving a second certificate of homestead entry in February, 1903, moved upon the land with his wife and younger children in April, 1903, and filed proof of settlement as required by law. For five years thereafter he lived with his wife and others of his family upon the land, and maintained a residence held, after contest by Williams, sufficient to entitle him to a State deed therefor. On the 14th of March, 1904, Williams filed a bill to quiet his title to said lands, in the circuit court for

Alpena county, in chancery, against Olson, the auditor general, and commissioner of the State land office, praying that previous sales of said lands for taxes be set aside and canceled; that the deed from the auditor general to the State be annulled; that all deeds issued by the commissioner of the State land office be declared void, and the cloud upon complainant's (Williams') title by reason thereof be removed, and Olson's State homestead entry be canceled, at the same time commencing a suit in ejectment to dispossess Olson of said premises. Appearance was duly entered in those cases for defendants by the attorney general's department, which assumed the defense as required in such cases by section 131 of the general tax law, and pleadings were perfected. As a result of negotiations conducted between the attorney general's department and the supposed counsel of defendant, details of which are not disclosed in this record, a stipulation in writing was entered into, on April 3, 1908, signed by Henry K. Gustin as attorney for plaintiff (Williams) and John E. Bird, attorney general, by Charles W. Gill, assistant attorney general, for defendants, discontinuing said ejectment case without costs. Gustin is shown to have represented Williams in tax litigation relative to this same land at certain hearings in the Alpena circuit court, but was not the attorney of record in either Williams' chancery suit to quiet title or in the ejectment case in relation to which he stipulated, and therefore it was not dismissed upon the records of said court. Defendant Williams also filed petitions in the original proceedings of the auditor general for the sale of the lands in question for the years 1890, 1891, 1892, and 1893, asking the circuit court to open the decrees for those years and set aside the sales, in order that he might file objections and be heard thereon. On the hearing of those matters Gustin declared in open

court that he was attorney for Williams. Counsel of record in both the ejectment case now sought to be restrained, and Williams' suit to quiet title, begun at the same time, stated to the trial court at the hearing of the instant case that said suit of Williams to quiet title was dismissed by consent in open court when the petitions of which Gustin had charge for Williams were heard. Williams' petitions to set aside the tax decrees were dismissed, after hearing, by the circuit court, and thereafter he instituted proceedings to appeal from the decree of dismissal, but, the proceedings not being perfected, the appeal was finally dismissed by this court, on June 15, 1910. When complainant sought to make final proof of his homestead entry of these lands, defendant Williams filed objections and unsuccessfully contested the same before the commissioner of the State land office, Gustin acting as his attorney.

Defendant's counsel in his brief devotes considerable space to argument of substantially the same questions which were before this court on the demurrer to complainant's bill, urging under the proofs, which follow the bill, that complainant has an adequate remedy at law. On the former hearing it was determined that a case for equitable relief was stated in the bill, and therefore, if the allegations therein were sustained, a decree as asked should be granted. All such legal objections to jurisdiction of the chancery court as were squarely before this court on the demurrer are now foreclosed by that decision, and the issue at this time must necessarily be whether the allegations of the bill are sustained by the evidence.

At the hearing no testimony was introduced on the part of defendant. An examination of complainant's testimony satisfies us that he has sustained by competent proof the material allegations in his bill. His proof was positive as to five years' residence upon the

land, and he introduced in evidence his homestead deed from the State, issued after his right thereto was contested by defendant, giving him title to the same. As a strict matter of law, the stipulation for dismissal of the ejectment case, signed by Gustin and the attorney general, cannot be regarded as binding upon defendant, because it was not signed by himself or his attorney of record. But it is shown by testimony introduced on the hearing of this suit that Gustin did represent defendant as attorney in certain of his litigation to defeat complainant's title, and while he was doing so the former suit to quiet title, with the same solicitor of record, was dismissed by consent in open court.

In support of the claim of laches, charged in complainant's bill against defendant and his grantor, it is shown that Beebe, the grantor, had resided in Alpena, about four miles distant from the lands, since 1871, when he acquired his title, and was engaged in business there; that defendant Williams, also a resident, was familiar with the property and acquired his title with knowledge of existing conditions, had been in frequent communication with complainant, and at one time advised him what steps he should take to establish a residence upon it; that the lands had been delinquent for years and deeded to the State by the auditor general as abandoned lands, in 1896, four years before defendant received his quitclaim deed from Beebe; that in attempting to homestead the 80 acres complainant, as early as 1897, had taken possession and exercised acts of dominion over the property, continuing to do so openly and notoriously, residing thereon after his second entry; that prior to the time complainant sought to locate the land as a homestead it was unoccupied, wild, and abandoned, delinquent for taxes for many years, and at the time defendant instituted proceedings against complainant and the

State to recover the same, no offer or attempt had been made by him or his predecessor to pay those delinquent taxes, which had been returned to the State year after year. The omission to do what one is by law required to do to protect his rights, and which justifies a fair presumption that he has abandoned the same, under circumstances which misled or prejudiced an adverse party, may in equity operate as laches which bar the assertion of such right later under changed conditions, even though the statute of limitations has not run. The elements of laches in this case bear close analogy to those disclosed in *Owens* v. *Auditor General,* 147 Mich. 683 (111 N. W. 354), and *Beuthien* v. *Dillon,* 160 Mich. 396 (125 N. W. 363).

We conclude that the history of this tax litigation, as disclosed by the record, establishes a case entitling complainant to equitable relief in harmony with the allegations and prayer of his bill, and the decree granted by the learned chancellor should not be disturbed.

The decree is affirmed, with costs to complainant.

BROOKE, C. J., and McALVAY, KUHN, STONE, OSTRANDER, and MOORE, JJ., concurred. BIRD, J., did not sit.